Oropallo v. Parrish                    CV-93-309-B    09/08/95

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


Charles J. Oropallo

    v.                                          Civil No. 93-309-B

Richard L. Parrish, et al


**O R D E R**

Charles J. Oropallo seeks damages as well as injunctive and
declaratory relief against defendant prison officials and inmates
for allegedly violating his civil rights.[1]  Specifically, he
alleges that defendants retaliated against him for filing
grievances in violation of his rights under the First Amendment.
He also asserts several other claims based on the New Hampshire
Constitution.  Defendants have moved to dismiss alleging inter
alia that the complaint fails to state a claim.  For the

---

[1]  The following prison officials and inmates are named as
defendants: Richard L. Parrish, prison official, John Doe #1,
inmate, John Doe #2, inmate, Loran Ackerman, prison official,
Michael J. Cunningham, Warden, Ronald L. Powell, Commissioner of
the New Hampshire Department of Corrections, Viola J.
Lunderville, Administrator of Security, Donald G. Robb, prison
employee, George R. Sasser, prison employee, and Ronald Patrick,
staff member in the Recreation Department.

following reasons, I grant defendants' motion.

## I. BACKGROUND

### A. Factual Background[2]

Since March 1985, Oropallo has been incarcerated in the New Hampshire State Prison. For approximately three years, he worked in the prison's recreation department, but in February 1991 he was terminated from his position. Just prior to his termination, Oropallo filed two complaints against the prison with the Department of Corrections (hereinafter "prison complaints"). The complaints related to missing wood in the hobbycraft shop and damage to Oropallo's lamp in the shop.[3] Lunderville, the Administrator of Security, investigated both complaints and recommended dismissal. In June 1991, the prison claims were

---

[2] When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must "accept the factual averments of the complaint as true, and construe these facts in the light most favorable to the plaintiff's case." PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 29 (1st Cir. 1991) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), cert. dismissed, 503 U.S. 257 (1992). I recount the facts with this standard in mind.

[3] Claim # 91-31-DOC sought damages in the amount of $42.65 for wood that disappeared from his hobbycraft locker. Claim # 91-32-DOC sought compensation in the amount of $29.00 for damage to his lamp in the prison store.

heard before the claims officer.  Oropallo was successful on one claim, but not the other.

Shortly after Oropallo filed the prison complaints, Parrish initiated a major disciplinary hearing against Oropallo charging him with possession of state owned property in his hobbycraft locker.[4]  The same day, Parrish instituted a ban barring Oropallo from the North Yard.  The effect of the ban was to preclude Oropallo from using any of the recreational facilities in the North Yard including the gymnasium, the hobbycraft shop, and the ball field.

After investigating the disciplinary report, the head of the New Hampshire State Prison's Investigation Department dropped the allegations.  However, Lunderville later ordered the hobbycraft shop foreman to write another disciplinary report based on the same allegations.  Oropallo received a hearing on this second report and was found guilty.  This finding was upheld by Michael Cunningham, the prison Warden, and Ronald Powell, the Commissioner of the New Hampshire Department of Corrections.

In April and May of 1992, Oropallo was prevented from

---

[4]  The report stated that Oropallo placed a state owned screwdriver in his hobbycraft locker.

3

attending a jazz concert and a power lifting event, both taking place in the North Yard.  In addition, he attempted to access the print shop to staple his legal papers and was denied access to the yard where the print shop is located.[5]  Oropallo attempted to determine why he had been barred from the yard and questioned the inmates' attorney, the warden, and Powell.  While Powell disavowed any knowledge of a ban, Ackerman indicated that Cunningham had ordered Oropallo barred from the North Yard.  Oropallo alleges that these actions were taken against him in retaliation for filing the prison complaints.

B.   **Oropallo's Cases Before this Court**

On August 7, 1991, Oropallo filed suit to challenge the conditions of his confinement.  He filed an amended complaint on January 30, 1992.  See Oropallo v. Powell et al., No. 91-339-M (D.N.H. March 31, 1994) (hereinafter Oropallo I).[6]  The complaint alleged violations of the First, Fourth, Fifth, Sixth, Eighth,

---

[5]  At the end of May 1992, Oropallo's legal materials were confiscated.  That action by the prison is the subject of a separate action filed by Oropallo on April 19, 1993.  Oropallo II, 1st Compl. ¶ 28; Appendix at 19.

[6]  Oropallo originally filed this action pro se, but at the time of the court's consideration of the complaint and the motion to dismiss, Oropallo was represented by counsel.  Oropallo I, slip op. at 1.

and Fourteenth Amendments to the United States Constitution, as well as various state law claims, arising from events beginning in 1985 through the time of filing the amended complaint in 1992. Id. Among the matters that formed the basis for the complaint was Oropallo's claim that he had been wrongly prevented from participating in recreational activities in the prison's North Yard. The court dismissed the amended complaint for failure to state a claim on March 31, 1994. Id. Oropallo subsequently appealed the dismissal to the First Circuit Court of Appeals.

On June 8, 1993, Oropallo, acting pro se, filed his first complaint in the present action, alleging various state and federal constitutional violations. Subsequently, I adopted the report and recommendation of the magistrate judge and ordered that the complaint be dismissed for failure to state a claim. See Oropallo v. Parrish et al., No. 93-309-B (D.N.H. Aug. 9, 1993) (hereinafter Oropallo II). Oropallo appealed that dismissal and the First Circuit reversed my order in part. Specifically, the First Circuit found that Oropallo might be able to claim that he had been subjected to unlawful retaliation for filing certain lawsuits. Accordingly, it remanded the case with instructions to allow Oropallo to file a second amended complaint

alleging unlawful retaliation.  See Oropallo v. Parrish et al., No. 93-1953, slip op. at 10-11 (1st Cir. May 5, 1994).[7]  Pursuant to the First Circuit's opinion, Oropallo filed a second amended complaint on July 20, 1994.  Defendants' motion to dismiss that complaint is now before me.

## II.  DISCUSSION

Defendants' motion states a myriad of arguments in favor of dismissal.[8]  I conclude that:  (1) Oropallo's claims against defendants Parrish, Cunningham, Powell, Lunderville, and Patrick should be dismissed because they are barred by res judicata; and (2) Oropallo's claims against the remaining defendants should be dismissed because they fail to state viable retaliation claims.

---

[7]  The First Circuit affirmed dismissal of Oropallo's procedural due process claim, Eighth Amendment claim, and equal protection claim.  In addition, the court noted that Oropallo did not challenge the dismissal of his § 1985 claim and, therefore, deemed that claim waived.  Thus, although Oropallo reasserts the § 1985 statute as a basis for his present complaint, I do not address it.

[8]  Defendants argue that (1) Oropallo failed to amend his complaint in conformity with the First Circuit directives; (2) Oropallo's amended complaint fails to state a cause of action for retaliation; (3) Oropallo's claims are barred by res judicata and collateral estoppel; (4) the defendants have sovereign immunity under the Eleventh Amendment; and (5) the defendants are entitled to qualified immunity.

6

In light of these rulings, I need not address the parties' other arguments.[9]

## A.    **Standard of Review**

In considering a motion to dismiss for failure to state a claim, I apply the following standard of review:  "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991).  In making this determination, I accept the truth of the facts alleged in the complaint and give the plaintiff the benefit of "every reasonable inference helpful to the plaintiff's cause." Garita Hotel, Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992).  Although I ordinarily will confine my review to the facts alleged in the complaint, I am also free to consider matters in the court record where necessary to

---

[9]  I also dismiss the complaint as far as it alleges retaliation by John Doe #1 and John Doe #2 because Oropallo fails to allege any facts which demonstrate that these defendants acted "under color of state law" in depriving him of his First Amendment rights.  See 42 U.S.C.A. § 1983 (West 1994).

evaluate a res judicata claim.  See <u>Day v. Moscow</u>, 955 F.2d 807, 811 (2d Cir.), <u>cert. denied</u>, 113 S. Ct. 71 (1992).

## B.    <u>The Doctrine of Res Judicata</u>[10]

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>Gonzalez</u>, 27 F.3d at 755.  The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits.  <u>Kale v. Combined Ins. Co.</u>, 924 F.2d 1161, 1165 (1st Cir.), <u>cert. denied</u>, 502 U.S. 816 (1991).  I address each element in turn.

### 1. Final Judgment on the Merits

"[D]ismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits,'" thus barring a subsequent suit on the same claim.  <u>Federated Dep't</u>

---

[10]    Because the preclusive effect of a prior federal action is at issue, I apply federal principles of res judicata. <u>Gonzalez v. Banco Central Corp.</u>, 27 F.3d 751, 755 (1st Cir. 1994).

Stores, Inc. v. Moitie, 452 U.S. 394, 400 n.3 (1981) (citing Angel v. Bullington, 330 U.S. 183, 190 (1947); Bell v. Hood, 327 U.S. 678 (1946)). Notwithstanding the general rule, Oropallo claims that Oropallo I is not a final judgment because it has been appealed. The federal rule, however, is that the pendency of an appeal does not alter the res judicata effect of an otherwise final judgment on the merits. In re Ewing, 852 F.2d 1057, 1060 (8th Cir. 1988); accord 1B James Wm. Moore et al., Moore's Federal Practice, ¶ 0.416[3.-2] (2d ed. 1995) (citing Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189 (1941); Commodities Export Co. v. United Customs Serv., 957 F.2d 223, 228 (6th Cir. 1992); United States v. International Bd. of Teamsters, 905 F.2d 610, 621 (2d Cir. 1990)). Thus, plaintiff's appeal of Oropallo I does not affect its status as a final judgment.

## 2. Identity of the Parties

Defendants Parrish, Cunningham, Powell, Lunderville, and Patrick were named as parties in both Oropallo I and the present action. Therefore, with respect to these defendants, there is clearly an identity between the parties in the two suits. Kale, 924 F.2d at 1165-66.

9

Defendants assert without explanation or proof that the other defendants, Ackerman, Sasser, and Robb, are in privity with the defendants named in the prior action. I conclude that this assertion is insufficient to meet their burden at the summary judgment stage since they bear the burden of proof at trial for this affirmative defense. See Fed. R. Civ. P. 56.

### 3. Identity of the Causes of Action

"To determine whether sufficient subject matter identity exists between an earlier and a later suit, federal courts employ a transactional approach." Gonzalez, 27 F.3d at 755 (citations omitted); accord Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985), cert. denied., 475 U.S. 1084 (1986). Thus, under this approach, a valid and final judgment in a prior action extinguishes any subsequent claims based on "any part of the [same] transaction, or series of connected transactions." Gonzalez, 27 F.3d at 755 (quoting Manego, 773 F.2d at 5); accord Restatement (Second) of Judgments § 24 (1982). A single transaction or series of transactions often gives rise to many claims. Gonzalez, 27 F.3d at 755. "It follows that the omission of a particular statement of claim from the original suit is of no great consequence; if the transaction is the same and the other components of the test are satisfied, principles of res

10

judicata will bar all claims that either were or could have been asserted in the initial action." Gonzalez, 27 F.3d at 756.

Whether related facts constitute a single "transaction" is determined pragmatically, giving weight to such considerations as whether the underlying facts were the same or substantially similar, Kale, 924 F.2d at 1166; Manego, 773 F.2d at 6; and whether the suits seek redress for "essentially the same alleged wrong," Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 8 (1st Cir. 1992), cert. denied, 113 S. Ct. 1416 (1993). Additionally, weight should be given to relevant factors such as closeness in "time, space, origin, or motivation, whether [the suits] form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement (Second) of Judgments § 24.

Based on this criteria, I conclude that the two actions are sufficiently identical to satisfy the res judicata standard. The prior complaint details the same events as the complaint in the present action. In both cases, Oropallo sets forth the following facts as examples of the retaliation he suffered. First, he alleges that his position in the recreation department was threatened. Compare Second Amended Complaint, ¶¶ 5-8, with Exhibit C, ¶ 61. Second, Oropallo alleges that his physical

11

well-being was threatened.  <u>Compare</u> Second Amended Complaint, ¶ 6, <u>with</u> Exhibit C, ¶ 59m.  Third, he alleges he was wrongfully found guilty of concealing contraband in his locker.  <u>Compare</u> Second Amended Complaint, ¶¶ 9-12, 15-16, 18, <u>with</u> Exhibit C, ¶¶ 69a-70a, 72-78.  Finally, Oropallo claims he was banned from participating in recreational activities.  <u>Compare</u> Second Amended Complaint, ¶¶ 13-14, 17, 19-26, <u>with</u> Exhibit E, page 67.  Because all of these events occurred before or during <u>Oropallo I</u>, he could have brought his retaliation and state constitutional claims in the prior action.  Further, because Oropallo was represented by counsel in the prior action, it is not unreasonable to foreclose Oropallo from litigating his present claims which could have been raised by his attorney in the prior suit either initially or through amendment prior to dismissal.[11]

C.   **Failure to State a Claim Against the Remaining Defendants**

Although a prison inmate does not have a constitutional right to participate in recreational activities of his choice, "[i]t is well established that conduct which is not otherwise

_____

[11]  Oropallo's claim that many retaliatory acts occurred after final judgment in <u>Oropallo I</u> is without merit.  Final judgment in <u>Oropallo I</u> was entered in April 1994.  Oropallo cites no actions by the defendants which occurred after that date.

constitutionally deficient is actionable under 42 U.S.C. § 1983 if done in retaliation for the exercise of constitutionally protected First Amendment freedoms." Oropallo v. Parrish, No. 93-1953, slip op. at 9 (citing Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); accord Beauchamp v. Murphy, 37 F.3d 700, 710 (1st Cir. 1994) (Bownes, J., dissenting), cert. denied, 115 S. Ct. 1365 (1995). Oropallo has a right under the First Amendment to "petition the government for a redress of grievances" and he exercised that right when he filed two complaints with the department of corrections. If, as he claims, he has been subjected to retaliation for the exercise of that right, he is entitled to the relief he seeks. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) ("a threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures"); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988). However, while the standard for stating a cause of action for retaliation is very liberal, McDonald, 610 F.2d at 18, particularly for pro se litigants, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), a plaintiff must, nevertheless, aver a "chronology of events" which warrants an inference of retaliation. Ferranti, 618 F.2d at 892; see also McDonald, 610

13

F.2d at 18.  The inference must be that the action taken was done for the purpose of retaliating against the prisoner and would not have occurred but for that purpose.  McDonald, 610 F.2d at 18.  In addition, "a plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right."  Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) (internal quotations and citations omitted).

### 1. Defendants Robb and Sasser

Oropallo alleges that on May 22, 1992, Robb prohibited him from entering the North Yard for the purpose of stapling his legal materials during the morning count and directed him to return after the count was completed.  2d Am. Compl. ¶ 21.  When Oropallo returned after the count, Sasser informed him that he could not enter the North Yard because the investigations department had banned him from that area.  Id.

There are no allegations or facts supporting an inference that Robb was doing anything more than enforcing a prison administrative rule.  There is nothing to indicate that he was personally involved in the ban or that he prevented Oropallo from entering the yard for that reason.

In addition, the brief statement concerning Sasser's actions does not provide any basis to infer that he was retaliating

14

against Oropallo for the prison complaints. According to the complaint, Sasser informed Oropallo that the investigations department had issued the ban. Sasser followed that department's directive in prohibiting Oropallo's access to the yard. There is not a sufficient nexus between these actions and the complaints Oropallo filed to support a conclusion that Sasser entertained a retaliatory motive. Therefore, I grant defendants' motion to dismiss for failure to state a claim with respect to defendants Ackerman, Robb, and Sasser.

## 2. Defendant Ackerman

Oropallo states in his original complaint in this action that shortly after he questioned prison officials concerning his ban from the North Yard, Ackerman confiscated his legal materials. Compl. at ¶ 28. He also states that this act by Ackerman is the subject of another suit in this court. Id.; see Oropallo v. Ackerman, Civil No. 93-cv-209-SD (claiming violation of his right to access to the courts). Although these actions by Ackerman may be in retaliation for Oropallo's inquiries about the North Yard ban, whether these allegations support a cause of action is most appropriately addressed in that other litigation dealing with this transaction. Accordingly, this claim is dismissed without prejudice.

15

### 3. The State Constitutional Claims

I dismiss the remaining state claims against Robb, Sasser and Ackerman without prejudice because I decline to exercise my discretion to retain supplemental jurisdiction over those claims after dismissing the federal cause of action.  See 28 U.S.C.A. § 1367 (West 1993).


### III.  CONCLUSION

For the foregoing reasons, I grant defendants' motion to dismiss and/or for summary judgment (document no. 29).

SO ORDERED.


_____
Paul Barbadoro
United States District Judge


September 8, 1995

cc:  Charles J. Oropallo, pro se
     Lucy C. Hodder, Esq.