Randy K. SILVA, Plaintiff,

v.

Harold W. CLARKE, Donna Jurdak and UMass Correctional Healthcare, Defendants.

Civil Action No. 08–10961–NMG.

United States District Court, D. Massachusetts.

March 13, 2009.

Charles W. Anderson, Jr., James A. Bello, Jennifer N. Pierce, Morrison, Mahoney LLP, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The *pro se* plaintiff in this civil rights suit asserts that his Eighth Amendment rights are being violated by the defendants' refusal to provide him with medically-required footwear. He has moved for a preliminary injunction and one of the defendants has moved to dismiss or, in the alternative, for summary judgment.

## I. *Background*

### A. Factual Background

The plaintiff, Randy Silva ("Silva"), allegedly suffers from "Pes Plano–Valgus" or severely flat feet. He asserts that he is currently being denied medically-required footwear by the defendants and, thus, subjected to cruel and unusual punishment in

violation of the Eighth Amendment. Defendant Harold Clarke ("Clarke") is the Commissioner of the Massachusetts Department of Correction ("DOC"), defendant UMass Correctional Healthcare ("UMass Healthcare") is the subcontracted medical provider responsible for providing healthcare to prisoners in the custody of the DOC and defendant Donna Jurdak ("Jurdak") is an employee of UMass Healthcare.

In February, 2006, while he was incarcerated at the Souza–Baranowski Correctional Facility, Silva was examined by Dr. John Harris of the Lemuel Shattuck Hospital. Dr. Harris diagnosed Silva's condition and noted that "Mr. Silva should be permitted to purchase sneakers from catalogues" rather than through the inmate canteen system.

Dr. Harris's diagnosis resulted in the generation of an "in house" Consultation Requisition and a referral to a podiatrist, Dr. Charles King. Dr. King examined Silva in August, 2006, and although Silva asserts that Dr. King also recommended that he be permitted to order sneakers from a catalog, Dr. King's recommendation states merely that he "[e]ncouraged inmate to order wider sneakers to accomodate [sic] his custom made orthotics."

Silva maintains that, despite the recommendations of Drs. Harris and King, he was unable to obtain sneakers from a catalog until May 25, 2007, more than one year after Dr. Harris initially diagnosed his condition. Silva nevertheless acknowledges that he did eventually receive the desired footwear and the exhibits attached to his complaint indicate that he was allowed to order a pair of New Balance sneakers.

Silva's present claim does not arise from the delay in receiving those sneakers but, rather, from the apparent unwillingness of the facility where he is currently incarcerated, the Massachusetts Correctional Institution at Norfolk ("MCI Norfolk"), to allow him to order a replacement pair. Officials at MCI Norfolk apparently refused Silva's request to order another pair of sneakers from an outside catalog because his medical approval letter authorizing such a purchase had expired. Silva was examined by a physician at MCI Norfolk on February 19, 2008, but his request to renew an order for sneakers from a catalog was denied. In confirming that denial in a letter to Silva, defendant Jurdak explained that Dr. King had recommended only that Silva order wider sneakers, which could be accomplished through the canteen system.

Silva asserts that by denying his request to order sneakers from an outside catalog, the defendants are subjecting him to cruel and unusual punishment in violation of his rights guaranteed by the Eighth and Fourteenth Amendments.

### B. Procedural History

Silva filed his complaint on May 30, 2008, along with the pending motion for a preliminary injunction. Defendant Clarke moved to dismiss for failure to state a claim or, in the alternative, for summary judgment on October 23, 2008. Oppositions have been filed to Silva's motion for a preliminary injunction by all three defendants and to Clarke's motion to dismiss by Silva.

## II. Motion to Dismiss or, in the Alternative, for Summary Judgment

### A. Legal Standard

Clarke's motion seeks dismissal of, or, in the alternative, summary judgment on, Silva's claims. Because it relies solely on the allegations in the complaint and exhibits attached thereto, however, this Court will treat his motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

In order to survive a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

## B. Application

■ The Eighth Amendment of the United States Constitution protects individuals from "cruel and unusual punishments." U.S. Const. amend. VIII. Claims arising out of an alleged denial of medical care must satisfy a demanding standard. Only "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" offend the Eighth Amendment. *See Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

■ Deliberate indifference "defines a narrow band of conduct" in which the care provided is "so inadequate as to shock the conscience." *Id.* at 162 (citation omitted). Consequently,

when a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute ... falls short of alleging a constitutional violation.

*Id.* at 162 (citation and internal quotation marks and alterations omitted). Although the Eighth Amendment protects inmates access to medical treatment it "does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir.1981) (citing *Ferranti v. Moran*, 618 F.2d 888, 890–91 (1st Cir.1980)).

■ Here, Silva's complaint fails to state an actionable Eighth Amendment claim and will therefore be dismissed. He does not allege a complete denial of medical treatment, *see Ferranti*, 618 F.2d at 891, but rather that prison officials refused to follow the recommendation of one of the physicians who examined him. Dr. Harris was apparently the first physician to diagnose Silva's condition and his recommended course of treatment included permitting Silva to order sneakers from catalogs. Thereafter, however, Silva was examined by Dr. King, a podiatrist. Dr. King "[e]ncouraged [Silva] to order wider sneakers to accomodate [sic] his custom made orthotics" but did not indicate that such sneakers had to be ordered from catalogs instead of the prison canteen system. Silva apparently saw another physician after his transfer to MCI Norfolk who concurred in Dr. King's recommendation.

Although prison officials at one time allowed Silva to purchase sneakers from outside catalogs, that fact does not establish that such treatment was constitutionally mandated. It merely reflects a decision to adopt one physician's recommendation which happened to be consistent with the treatment that Silva himself preferred. Prison officials were free to change that course of treatment in favor of Dr. King's

recommendation, which they apparently did after Silva's transfer to MCI Norfolk. *See Layne,* 657 F.2d at 473 ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice.").

The allegations in Silva's complaint and the exhibits attached thereto demonstrate that Silva's foot condition received adequate medical attention. He was examined by several doctors and given custom made orthotics. *See id.* at 474 ("[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." (citation and internal quotation marks omitted)). His inability to order footwear from outside catalogs, under such circumstances, does not demonstrate medical care "so inadequate as to shock the conscience." *See Feeney,* 464 F.3d at 162 (finding that a 22-month delay in receiving orthotics was not cruel and unusual punishment).

Accordingly, defendant Clarke's motion to dismiss will be allowed. Furthermore, although the defendants Jurdak and UMass Healthcare have not sought dismissal or joined in Clarke's motion, this Court's analysis applies equally to the claims against those defendants. Moreover, because Silva had notice of the grounds on which Clarke sought dismissal he is not prejudiced by this Court's *sua sponte* dismissal of his claims against the remaining defendants on those same grounds. Regardless of who is responsible for preventing Silva from obtaining footwear from catalogs, such action does not rise to the level of "deliberate indifference" sufficient to state a claim pursuant to the Eighth Amendment.

### III. *Plaintiff's Motion for a Preliminary Injunction*

Because Silva's complaint fails to state a claim upon which relief can be granted his case will be dismissed and his motion for a preliminary injunction will be rendered moot.

### ORDER

In accordance with the foregoing, the motion of defendant Clarke to dismiss (Docket No. 23) is **ALLOWED** and plaintiff's motion for a preliminary injunction (Docket No. 2) is **DENIED** as moot. The plaintiff's claims against the remaining defendants are dismissed *sua sponte.*

**So ordered.**